UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARMEN GORDON, *on behalf of minor C.J.Z.*,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 18-cv-14062
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12] AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11]**

Carmen Gordon is the mother of an 11-year-old boy ("CJZ") who suffers from asthma, allergies, and depression. CJZ received disability benefits for seven years until the Social Security Administration determined in 2015 that he was no longer disabled. Gordon, on behalf of her son, now challenges the Administrative Law Judge's determination that CJZ is not disabled.

**I.**

The Social Security Administration (SSA) found that before the age of two, CJZ was disabled because of his asthma and awarded him Social Security benefits. (ECF No. 7-2, PageID.47.) The SSA later reevaluated CJZ and found that there had been a decrease in the medical severity of his asthma. (*Id.* at PageID.50.) The SSA determined that, as of age 11, CJZ was no longer disabled and terminated his benefits. (*Id.* at PageID.47.) A state agency Disability Hearing Officer upheld the determination. (*Id.*) Gordon then requested a hearing before an Administrative Law Judge (ALJ). (*Id.*) In addition to CJZ's original impairment of asthma, by the time of the May

2018 hearing, CJZ also suffered from depression. (*Id.* at PageID.47, 51.) The ALJ found CJZ was not disabled and denied the claim. (*Id.*)

In making this determination, the ALJ first found that CJZ had two severe impairments: asthma with allergic rhinitis and depression. (*Id.* at PageID.51.) The ALJ next found that neither the asthma nor the depression was severe enough to medically meet or equal a listed impairment. (*Id.* at PageID.51–52.) The ALJ next analyzed whether CJZ's impairments functionally equaled a listing. The evidence that the ALJ considered included testimony by CJZ and Gordon, written statements and function reports from Gordon, CJZ's medical records, two childhood disability evaluations completed by state agency physicians, a questionnaire completed by CJZ's teacher, and CJZ's Global Assessment of Functioning scores. (ECF No. 7-2, PageID.53–56.) The ALJ next applied this evidence to determine whether CJZ had "marked" or "extreme" limitations in six domains of function. The ALJ found that CJZ had "less than marked" limitations in all six domains. (*Id.* at PageID.57–62.) Because CJZ did not have impairments resulting in either marked limitations in two domains or extreme limitation in one domain, the ALJ determined his impairments did not functionally equal a listing. (*Id.* at PageID.62.) Thus, the ALJ concluded that CJZ was no longer disabled as of January 26, 2015, just after CJZ's 11th birthday. (*Id.*)

Gordon's request for review by the Appeals Council was denied. (ECF No. 7-2, PageID.35.) Gordon subsequently filed this federal court action on behalf of CJZ for review of the Commissioner of Social Security's final disallowance of disability benefits. (*See* ECF No. 1.) The parties filed cross-motions for summary judgment. (ECF No. 11; ECF No. 12.)

## II.

Under 42 U.S.C. § 405(g) the Court's review of a disability determination by the Commissioner of Social Security is limited such that the Court "must affirm the Commissioner's

2

conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). The Court considers the record evidence as a whole, but does "not try the case de novo, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

## III.

### A.

Gordon first argues that the ALJ erred when he failed to obtain a medical opinion on medical equivalency. It is unclear whether Gordon is arguing that the ALJ was required to obtain an opinion on CJZ's depression—a more recent condition—or that the ALJ needed to obtain an updated medical opinion based on additional evidence of the severity of CJZ's asthma, or both. Regardless, both arguments are without merit.

Gordon grounds her argument in Social Security Ruling 96-6p and the Hearings, Appeals, and Litigation Law Manual (HALLEX) I-5-4-30. SSR 96-6p required ALJs to consider a medical opinion on the issue of medical equivalency. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *see also Jammer v. Comm'r of Soc. Sec.*, No. CV 18-10445, 2019 WL 1372171, at *7 (E.D. Mich. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1354037 (E.D. Mich. Mar. 26, 2019). And HALLEX I-5-4-30 is a temporary instruction published in 1993 to give guidance on new regulations. 1993 WL 13011402, at *1 (Mar. 10, 1993).

3

But SSR 96-6p was rescinded and replaced by SRR 17-2p before the ALJ hearing was held in this case. *See* SSR 17-2p, 2017 WL 3928306, at *1 (Mar. 27, 2017). And SRR 17-2p also takes precedence over HALLEX I-5-4-30, which was temporary, was never binding, and is now out of date. *See Robinson v. Colvin*, No. 13-14313, 2015 WL 12711578, at *8 (E.D. Mich. July 14, 2015) (citing *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008)).

Under the law applicable at the time of the ALJ's decision, he was not required "to obtain [medical expert] evidence or medical support staff input . . . [when] finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4; *see also Jammer,* 2019 WL 1372171, at *7; *Cooper v. Comm'r of Soc. Sec.*, No. CV 18-12611, 2019 WL 2240711, at *5 (E.D. Mich. Apr. 8, 2019), *report and recommendation adopted*, 2019 WL 2208151 (E.D. Mich. May 22, 2019).

In Gordon's case, two state physicians concluded that CJZ's asthma and allergies do not meet or medically equal a listing. (ECF No. 7-7, PageID.476, 529.)

It is true that no state physician opined on CJZ's depression. But the ALJ found that CJZ's "depression does not meet [a] listing." (ECF No. 7-2, PageID.52.) And under SSR 17-2p, the ALJ was "*not* required to first obtain medical expert evidence to support that finding, nor was [he] required to specifically articulate the bases for that conclusion." *Cooper*, 2019 WL 2240711, at *5.

To the extent Gordon argues the ALJ needed to obtain an updated opinion on CJZ's asthma, that contention is not supported by SSR 17-2p either since the ALJ also found that the severity of CJZ's asthma did not meet the listing criteria. (*See* ECF No. 7-2, PageID.52.)

**B.**

Gordon makes several arguments that the ALJ did not comply with Social Security Ruling 09-1p when evaluating the severity of CJZ's limitations. *See* SSR 09-1P, 2009 WL 396031 (Feb. 17, 2009). SSR 09-1p provides guidance on determining childhood disability under the functional equivalence rule, also known as the "whole child" approach. *Id.* "Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration (SSA) in accordance with section 402.35(b)(1) of the Social Security Administration Regulations (20 CFR Part 402), and are to be relied upon as precedents in adjudicating other cases." Office of Program Support, *Social Security Rulings and Acquiescence Rulings: Preface*, Social Security Administration, www.ssa.gov/OP_Home/rulings/rulings-pref.html (last visited Feb. 6, 2020).

**1.**

Gordon first points to the requirement in SSR 09-1p that an adjudicator "consider the effects of the impairment(s) longitudinally (that is, over time) when [the adjudicator] evaluate[s] the severity of the child's limitations." SSR 09-1P, 2009 WL 396031, at *9.

Gordon first argues that the ALJ incorrectly calculated the number of school days CJZ had missed. (ECF No. 11, PageID.717–718.) But this argument is completely unsupported by the record since the ALJ came to the same conclusion as Gordon: CJZ missed 12 days of school over a period of five months, which equates to about 2 days per month. (ECF No. 7-2, PageID.56; ECF No 11, PageID.718.)

Gordon next argues that the ALJ did not consider the number of days of school CJZ missed in combination with the number of times he uses his nebulizer or asthma medication during school.

5

(ECF No. 11, PageID.718.) This seems to be less of an argument about longitudinal analysis and more of a challenge to the ALJ's weighing of the evidence, which is addressed below.

In fact, the ALJ's opinion shows he conducted a thorough longitudinal analysis of CJZ's condition. The ALJ examined evidence from several different months between January 2016 and February 2018. (ECF No. 7-2, PageID.55–56.) The ALJ properly considered fluctuations in CJZ's condition and functioning during that period. For example, the ALJ noted that in July 2016, CJZ was diagnosed with "mild persistent asthma, uncomplicated," but that in May 2017 CJZ "had been coughing and wheezing for one week and using [the] nebulizer frequently." (ECF No. 7-2, PageID.55.) So there is no evidence to support Gordon's contention that the ALJ failed to conduct a proper longitudinal analysis of CJZ's conditions.

### 2.

Gordon also asserts that the ALJ failed to consider, as directed by SSR 09-1p, the help and support CJZ receives in order to function.

SSR 09-1p states that in order to "determine the extent to which an impairment(s) compromises a child's ability to independently initiate, sustain, and complete activities," ALJs "consider the kinds of help or support the child needs in order to function." SSR 09-1p, 2009 WL 396031, at *6. This includes if a child needs a "person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning." *Id.*

Gordon argues the ALJ did not consider the quantity of CJZ's absences from school and the time spent during school days using his rescue inhaler to treat his asthma. Gordon claims that CJZ misses 30 to 50 minutes of productive school time each day to treat his asthma. But this assertion is not supported by facts in the record. Moreover, the Commissioner points out that CJZ

actually testified that he uses his inhaler 6 to 10 times per *month*, rather than per *day* as Gordon suggests. (*See* ECF No. 7-2, PageID.76.)

In addition to his inhaler use, Gordon also asserts that CJZ requires additional assistance from his teachers because of his absences. Gordon cites to nothing in the record to support this statement. And in the questionnaire completed by CJZ's teacher, the only limitation she notes is that CJZ does not play sports because of his asthma. (ECF No. 7-6, PageID.237.) The teacher indicates that she does not know if CJZ takes any medication. (*Id.*)

Gordon also ignores the fact that the ALJ *did* consider the types and amount of support CJZ receives at school and at home. The ALJ noted that CJZ sometimes uses a rescue inhaler at school, and on other days has to stay home and rest. (ECF No. 7-2, PageID.53.) The ALJ also discussed the testimony given by Gordon detailing the treatment CJZ receives at home and his hospitalizations. (*Id.*) So again, there is nothing to establish the ALJ misapplied the governing ruling.

### 3.

Third, Gordon alleges that the ALJ failed to consider the "whole child" in evaluating functional equivalence. The "whole child" approach for determining functional equivalence is outlined in SSR 09-1p. The approach evaluates "all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects" by beginning with a consideration of actual functioning. *See* SSR 09-1p, 2009 WL 396031, at *2.

Gordon's main support for this argument seems to be that the ALJ did not explicitly ask the questions outlined in the ruling. *See* SSR 09-1p, 2009 WL 396031, at *2–3. But the questions outlined in the ruling are simply a guide for the questions that adjudicators ask themselves when considering functional equivalence. The ruling includes the following caveat: "[W]e do not require

7

our adjudicators to discuss all of the considerations in the sections below in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings." *Id.* at *3.

The Court finds that the ALJ's opinion makes clear that he did follow the "whole child" approach. The ALJ spent more than four pages detailing CJZ's actual functioning and limitations before proceeding to a discussion of the six domains of function. (*See* ECF No. 7-2, PageID.52–57.) In those four pages, the ALJ explicitly discussed many of the questions outlined in SSR 09-1p. For example, the ALJ discusses CJZ's limitations in participating in sports and outdoor activities at school, his use of a rescue inhaler at school and at home, his absences from school, his hospitalizations, and his behavioral issues. (*Id.*) The ALJ then notes that despite these limitations, CJZ attends school, plays with friends (including basketball every day), has a positive attitude, and is responsible for his own personal care. (*Id.* at PageID.54.) In light of this extensive analysis, the Court finds that the ALJ did follow the "whole child" approach as outlined in SSR 09-1p and so Gordon's argument is without merit.

**C.**

Gordon finally argues that the ALJ committed reversible error when he found that CJZ's impairments did not functionally equal a listing. It is not clear on what standard this challenge is based. Gordon does not allege that the ALJ applied the incorrect legal standard, but instead seems to be asking the Court to reweigh the evidence. Gordon apparently believes that the ALJ should have given more weight to evidence of CJZ's school absences and emergency-room visits and should have found an extreme limitation in the domain of health and physical well-being. But, as discussed above, the ALJ considered all of the evidence that Gordon cites and came to the conclusion that CJZ had a "less than marked limitation" in all six domains. (ECF No. 7-2,

PageID.57–62.) And Gordon does not point to any specific evidence that the ALJ did not consider that would strongly favor a finding of "extreme" in the domain of health and physical well-being. It is not the province of this Court to reweigh the evidence. *See Issac v. Comm'r of Soc. Sec.*, No. 19-10124, 2019 WL 7286908, at *11 (E.D. Mich. Nov. 27, 2019) (citing *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982)), *report and recommendation adopted*, 2019 WL 7282474 (E.D. Mich. Dec. 27, 2019). And the ALJ's determination that CJZ's impairments do not functionally equal a listing, and thus that he is not disabled, is supported by substantial evidence.

## IV.

Because the ALJ applied the correct legal standards and made findings supported by substantial evidence, the Court AFFIRMS the Commissioner's disability determination. The Court GRANTS the Commissioner's motion for summary judgment (ECF No. 12) and DENIES Gordon's motion for summary judgment (ECF No. 11).

SO ORDERED.

Dated: February 12, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
